PARSONS *v.* FOX.

No. 10220. October 9, 1934.

*J. Mallory Hunt,* for plaintiff. *R. R. Jackson,* for persons at interest, not parties.

*V. K. Meador* and *W. J. Parker Jr.,* for defendant.

Gilbert, J. Henry & Co. is a corporation chartered by the superior court of Fulton County, Georgia. Its charter specifies that the business to be conducted is buying and selling real and personal property including choses in action, etc., wages and salary accounts. The charter states: "The corporation shall not have authority to lend money in any sum or amount whatever." On June 18, 1930, Fox signed a paper headed, "Application to sell Salary or Wage Account." It recited that he made application to Henry & Co. to sell an undivided interest in his account for salary earned for six days preceding the date, $26.50, and in order to induce the buyer to buy the account he agreed to take $25.00 for it. Fox also signed a second paper assigning and selling the account to Henry & Co. This paper recited that it was an absolute and unconditional sale of an undivided interest in said account due by the W. & A. Ry. and was not a loan or advance of money. There were many other recitals, and there also appeared a direction to the employer to pay Henry & Co. the money, and an authorization to the purchaser to receipt for the same. On October 26, 1932, this writing "with all rights that have arisen thereunder" was sold by Henry & Co. to W. W. Parsons. Neither Henry & Co. nor Parsons served any notice on the employer or made any effort to collect the wages. Fox collected the six days pay so "sold."

On October 27, 1932, Parsons filed suit in four counts against Fox, all claims resulting from the alleged assignment. Count 1 alleged that Fox had defrauded plaintiff out of the money, was in possession of it, held it fraudulently and refused to turn it over. This count was based on the alleged conversion. Count 2 averred that Fox by collecting the fund became a trustee for plaintiff, that Fox had no title to it, and that his refusal to turn it over was a trespass. Count 3 alleged that Fox had defrauded plaintiff out of the money, and was accordingly liable in damages. Count 4 was

addressed to the equity side of the court, and prayed for a decree of title, a decree of trust, and a decree directing Fox to pay the money into court. Fox's answer was based on the contention that the transaction was really a usurious loan. He averred that this loan had been fully paid. He attached an exhibit showing the payments. These were 67 in number, were for $2.25 each, two each month on the 1st and 15th, beginning with September 15, 1927, and ending with June 18, 1930. The other allegations were to the effect that there was but one loan, which was renewed from pay-day to pay-day. Fox contended that all he ever got out of all the transactions was an original advance of $25, that over a period of 2 years, 9 months, and 18 days he had paid back $150.75, that 8 per cent. interest on the $25 for the period would have been $5.60, leaving $145.15 to be applied to the original principal of $25, the overplus being $120.15.

The case was referred to an auditor, who duly made a report which was in favor of Fox on all material points. Exceptions of law and of fact were filed. The court overruled all exceptions of law, disapproved all exceptions of fact, and entered final judgment for Fox. The case is here on assignment of error to these rulings.

■ ■ The evidence fully substantiated the allegations in Fox's answer to the effect that, notwithstanding the many transactions between the parties, all the money Fox ever got from Henry & Co. was the original $25 which he received on the first visit to their office, and that during the period of time involved he had paid to Henry & Co. the amounts stated in his answer.

A loan may be defined as the delivery by one party to, and the receipt by another party of, a sum of money upon an agreement, express or implied, to repay the sum with or without interest. The main issue in the case was whether the true nature of all the dealings which occurred created the relationship of buyer and seller with an assignment of wages as the subject-matter, or whether it was really a usurious loan. This being true, it was proper for the auditor to receive evidence aside from the contracts themselves. In *Rogers* v. *Blouenslein,* 124 *Ga.* 501, 503 (52 S. E. 617, 3 L. R. A. (N. S.) 213), there was a sale of diamonds, with an option to buy back. It was stated: "The transaction, being on its face apparently lawful, might nevertheless be shown to be a device for concealing usury."

"In determining whether the contract is usurious, the substance of the transaction will be critically inspected and analyzed; for the name by which the transaction is denominated is altogether immaterial if it appears that a loan of money was the foundation and basis for the agreement which is under consideration." *Bank of Lumpkin* v. *Farmers State Bank,* 161 *Ga.* 801 (132 S. E. 221). "Whether a given transaction is a purchase of land, or a loan of money with title to the land taken as security, depends not upon the form of words used in contracting, but upon the real intent and understanding of the parties. No disguise of language can avail for covering up usury, or glossing over an usurious agreement." *Pope* v. *Marshall,* 78 *Ga.* 635, 640 (4 S. E. 116). In this case Judge Bleckley remarked: "The theory that a contract will be usurious or not according to the kind of paper bag it is put up in, or according to the more or less ingenious phrases made use of in negotiating it, is altogether erroneous. The law intends that a search for usury shall penetrate to the substance."

On the trial before the auditor the plaintiff introduced evidence to show the general way in which Henry & Co. conducted its business. When a customer came in to settle up an old assignment and entered into a new one, he was required to pay in currency the full amount of the old assignment; this currency was laid on the desk; and when the new assignment was prepared and signed, the amount due the customer on it was taken out of the cash drawer and handed to him. He never received from Henry & Co. on the new assignment the same bills and notes that he had paid to Henry & Co. for the old assignment. Many of the statements of the plaintiff's witnesses in connection with these matters were contradicted by the evidence for Fox; but in our opinion none of it is of controlling importance. Currency is currency, and a certain sum taken from one pile of bills is the exact equivalent of the same amount taken from another. It is idle to say that if the transactions were really loans, or renewals of a previous loan, this method of handling the details could affect their true nature. According to Fox's testimony, he made 67 trips to the office of Henry & Co. On the first trip he came out having $25 more in his pocket than he had when he went in. But never again. On each of the other trips he came out having $2.25 less than when he went in, and on each of these 66 occasions the till of Henry & Co. profited by the visit to the ex-

tent of this $2.25. Fox stated in so many words that at the original transaction he "borrowed" $25 from Henry & Co. As to later transactions he testified: "I gave him $5, and he gave me back $2.75, taking out $2.25 worth of interest. I never paid the principal; I just paid the interest on it." He also swore that he never got any money except the original $25, and went back every pay-day and paid the interest. Two other witnesses testified that they went there with Fox and saw him pay $2 or $3 and sign a paper. The witness Brown said that Fox "laid in the window a $5 bill, and I don't know whether he got any change or not." Fox testified that on making a new assignment a printed sheet with unfilled blanks would be put before him; that he had no chance to read the paper. "You are not permitted to read them. They don't let it get that far out of the window. . . You ain't got no chance whatever." Much of this testimony was contradicted by witnesses for plaintiff.

The alleged assignment introduced before the auditor contained these provisions: "I hereby direct my said employer to pay Henry & Co. said monies. I hereby authorize the purchaser of this account, in my name and stead, and as my attorney in fact, to sign my name to any and all checks, vouchers, receipts, and acquittances necessary and proper to be signed in order to collect said account, the said money, and to evidence the payment of same." The paper did not reserve any right in Fox to make the collection. Yet, notwithstanding these terms of the contract, the evidence is undisputed that Henry & Co. did not at any time undertake to collect the amount allegedly due it from the employer, but, on the contrary, acquiesced without objection in Fox making the collections. No notice of the alleged assignment was ever served on the railroad company by Henry & Co. We are not unmindful of the ruling in *Hubbard* v. *Bibb Brokerage Co.*, 44 *Ga. App.* 1, 10 (160 S. E. 639), to the effect that where there is an assignment of a part of a debt, not assented to by the debtor, the sale conveys to the buyer only an equitable title to the part sold, and the legal title remaining in the assignor gives him the right to make collection of the debt; but this does not militate against our belief that the continued failure of Henry & Co. to serve notice on the railroad company, and its continued acquiescence in the collections by Fox which it claimed belonged to it, was an additional item which the

auditor might fairly conclude led rather to the belief that the transaction was really a loan than that it was a sale.

It is usual experience that when a buyer buys an article he proceeds to possess himself of it or arrange to ensure its possession. Whether the subject-matter be a horse or promissory note or account or what not, that is the usual procedure. If A for some reason satisfactory to himself desires to be the owner of an account due by X to a certain person, and goes to the creditor and buys the account and has it transferred to him, in the nature of the case he will notify X that he is now the owner of the account. That is the only thing he can do for his full protection. In the absence of notice, if X pays the account to the merchant he will be absolved. And when the account is due, A will collect it from X. These are matters of common experience, and what we have said applies almost as forcefully where the purchase is of a part of an account as where the purchase is of all of the account. It is undisputed in the case at bar that in all the 67 alleged purchases of wages due by the railroad to Fox, not in a single instance, as stated above, did Henry & Co. serve any notice on the railroad company of the fact that it had bought the wages, nor did it call on the railroad company and demand payment of them, nor did it enter objection to Fox himself collecting them. The evidence shows conclusively that during all the months involved Fox collected his wages regularly from the railroad company without objection on the part of the alleged buyer. In such a case, when we see the seller, after the purported sale of a definite interest in the account, collect the money without objection from the buyer and enter into a new agreement, paying the buyer an additional sum, this course of dealing authorizes the inference that no real sale was ever contemplated, that neither party assumed that the "buyer" would take possession of the account "sold," and that the true intent was that the one party was merely to have the use of the other party's money for a time, and then was to pay it back out of a certain fund or renew the loan and pay additional interest.

The circumstances of the case at bar bring it squarely within the ruling of the Court of Appeals in *Jackson* v. *Bloodworth,* 41 *Ga. App.* 216 (152 S. E. 289), and with that ruling we fully agree. The headnote in that case is as follows: "Where one makes an assignment of his past earned wages in a certain amount, in con-

sideration of a less amount of money paid him by the assignee, and where, with the assignee's approval, he afterwards collects the wages from his employer and converts them to his own use, and where, after a period of time within which the assignor has earned additional wages in the same amount, the assignee accepts from the assignor a sum of money and takes from him a new assignment of the last earned wages but pays him nothing therefor, and where the execution of the new assignment and the payment of the sum of money by the assignor are accepted by the assignee in settlement of all claims against the assignor arising out of the first transaction, in which the assignor assigned his wages and afterwards collected them and applied them to his own use, and where this process is repeated periodically from time to time, each time the assignor executing a new assignment for newly earned wages and paying a sum of money to the assignee, and the assignee refraining for a period of time thereafter from molesting the assignor by reason of any claim the assignee may have against him, the series of transactions is not a series of bona fide assignments of wages, but, under the guise of assignments of wages, constitute a loan by the assignee of the original sum of money advanced to the assignor in consideration of the first assignment of his wages, and the periodic payments made from time to time by the assignor to the assignee amount to interest paid by the assignor upon the money which he originally received from the assignee; and where the interest thus paid is usurious, the series of transactions constitute a scheme and device for the evasion of the laws against usury." The case at bar was in equity. It was a suit on a transaction alleged to be an assignment of a part of a fund. *King* v. *Central of Ga. Ry. Co.,* 135 *Ga.* 225 (69 S. E. 113, Ann. Cas. 1912A, 672). Also, one of the counts of plaintiff's petition expressly invoked relief which only a court of equity can grant. Therefore the plaintiff was not, as a matter of right, entitled to have his exceptions of fact submitted to a jury. It is well settled that in equity cases this court will not interfere with the discretion of a trial judge in disapproving exceptions of fact to an auditor's report, unless it appears that there has been a manifest abuse of such discretion. Code, § 5141. *Crim* v. *Alston,* 169 *Ga.* 852 (3) (151 S. E. 807), and cit. And where the evidence, though conflicting, supports a finding of the auditor, it is not an abuse of discretion to disapprove an exception

of fact to that finding. *Henderson* v. *Lott,* 170 *Ga.* 261 (152 S. E. 98). We find no abuse of discretion in this connection, and in our opinion the court committed no error in accepting the report of the auditor and in overruling all exceptions of law and disapproving all exceptions of fact.

The auditor went beyond the strict scope of her duties under the Civil Code (1910), § 5129 et seq., when she of her own initiative procured certain pay-checks from Nashville. These checks were not legally identified and not tendered in evidence in due course, but their consideration by the auditor is a matter of minor importance. In the view we take of the case, these checks could not have affected the result of the litigation, and none of the entries on them were of importance either way. No material issue in the case depended on these checks or the endorsements on them. In view of the conclusion we have reached, it is unnecessary to discuss the rulings in *Etheredge* v. *Wilson,* 41 *Ga. App.* 432 (153 S. E. 230), *Wilson* v. *Etheredge,* 174 *Ga.* 386 (162 S. E. 707), *Sampson* v. *Bibb Investment Co.,* 47 *Ga. App.* 649 (171 S. E. 221), and similar cases, where the assignments involved were treated as actual assignments, and no point was made that the transactions were in fact loans which had been put in the form of assignments in an attempt to evade the laws against usury. Here the transaction was in form an assignment, but Fox's pleadings and the evidence presented in support of them required a decision as to whether the relation of debtor and creditor existed or that of vendor and purchaser. The issue being squarely presented and the decision being that the transaction was a usurious loan, paid off many times over, Fox at the time he collected his last wages from the railroad was under no obligation under the contract. He had the right to collect these wages and appropriate them to his own use; and no right of action exists for conversion, fraud, misappropriation of money, damages, or any of the other things claimed in the several counts in the petition. In the light of all the evidence the auditor was authorized to find that the transaction was a loan on which usury was exacted.

Stress is laid by counsel on the fact that Henry & Co. was not licensed to lend money and not authorized by its charter so to do. Want of authority under license or charter to lend money is not, under

the facts of this case, material on the issue as to whether the transaction here involved was actually a loan or a sale.

■ The third and fourth headnotes do not require elaboration.

*Judgment affirmed. All the Justices concur.*