**In re CLEAPOR.**

No. 21020.

District Court, N. D. Georgia.

Sept. 30, 1936.

R. B. Pullen, of Atlanta, Ga., for petitioner.

Don K. Johnston, of Atlanta, Ga., for respondent.

Victor K. Meador, of Atlanta, Ga., Amicus Curiae.

UNDERWOOD, District Judge.

This proceeding by which petitioner invokes the jurisdiction of this court in this case is in substance and effect a supplemental and ancillary bill in equity, in aid of and to effectuate an order of this court discharging him from all his provable debts except such as are excepted by law. This court has jurisdiction in such case to secure and preserve the fruits and advantages of the judgment or decree rendered therein (Local Loan Co. v. Hunt, 292 U. S. 234, 239, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195), and to "determine the effect of the adjudication and order, and enjoin [respondent] from its threatened interfer-

ence therewith" (Id., 292 U.S. 234, at page 241, 54 S.Ct. 695, 697, 78 L.Ed. 1230, 93 A.L.R. 195).

### Findings of Fact.

In this case, petitioner seeks to enjoin the prosecution, in the state court, of a debt he alleges to have been discharged in his bankruptcy proceeding. Respondent, on the other hand, claims the transaction was a valid salary assignment and that the failure of petitioner to account to it for the proceeds thereof created a debt which was not dischargeable in bankruptcy.

Petitioner herein, Richard F. Cleapor, filed his petition and schedules in bankruptcy in this court on September 6, 1934, and was duly adjudged a bankrupt on the same day. In due course he was discharged, by decree of this court, on November 17, 1934, from all provable debts and claims except such as are by law excepted from the operation of the discharge in bankruptcy.

In the original schedules the Central Investment Company, a respondent herein, was listed as a creditor upon a "loan made in the form of a salary assignment on or about January 1st, 1929, and renewed from time to time, the last renewal being August 14, 1934, $55.00."

The schedules also listed as an asset of the bankrupt, along with other things "wages due and uncollected $60.00." This item of earned and uncollected wages was, on September 20, 1934, upon application of the bankrupt, and without objection on the part of respondent or any other creditor, set aside by the referee to the bankrupt as a homestead.

Respondent was fully advised of the bankruptcy proceeding; of the listing of its name as a creditor; of bankrupt's contention that this claim was a dischargeable debt and that his earned and uncollected salary, only part of which respondent claimed as an assignment, should be set aside to him as a homestead; of the setting aside of the homestead; of the final discharge of the bankrupt; and of all other proceedings in the bankruptcy court.

With this knowledge, however, respondent, in pursuance of a fixed custom followed by it in such cases, did not appear in the bankruptcy court or file any claim or pleading whatever, but wholly and purposely ignored the bankruptcy proceeding and chose rather to wait until after the discharge was granted, and then to file, in

a justice of peace court of Georgia, a suit for the amount of its alleged assignment.

Petitioner, who was an employee of the Atlanta, Birmingham & Coast Railroad Company, had been dealing with respondent for four or five years, going to it periodically for funds which respondent delivered to him upon the execution of a document purporting to be an assignment of a portion of his salary. There were seventy-five or eighty of these transactions during the period petitioner and respondent were dealing with each other and the amounts involved ranged from $5 to $50 each. Petitioner was earning about $150 per month and was drawing his salary twice a month, though the employer always held back one-half month's pay, facts fully known to respondent.

While the transactions purported to be assignments of portions of salary already earned, and respondent was authorized to notify the employer of the assignments "at any time said buyer or assignee may choose to do so" and to sign all receipts and acquittances necessary to get possession of the money, and although the Georgia law requires (Ga.Code 1933, § 25-319) that notice be given to the employer within five days of the execution of a salary assignment in order to be binding upon him, yet it is undisputed that the respondent did not, in all the seventy-five or eighty transactions admitted, in a single instance serve any notice on the employer, or call on it or demand payment of the alleged assignment, or make any effort whatever to secure same except through petitioner; nor did it ever object to petitioner's collecting his salary, but, on the other hand, it was understood, and the invariable practice was, that petitioner would collect the salary and pay respondent its part thereof. It is quite clear that petitioner sought only loans, though respondent did everything it could to give them the character of assignments of salary.

Typical examples of the transactions are shown by respondent's records of the last eight, which were as follows:

| Date | Amount of Assignment | Amount Actually Received | Date Paid |
|---|---|---|---|
| May 17 '34 | $10.70 | $10.00 | Jun. 6 '34 |
| May 22 '34 | 5.35 | 5.00 | Jun. 6 '34 |
| July 28 '34 | 5.35 | 5.00 | Aug. 20 '34 |
| July 31 '34 | 5.35 | 5.00 | Aug. 20 '34 |
| Aug. 22 '34 | 5.35 | 5.00 | Sept. 1 '34 |
| Aug. 25 '34 | 5.35 | 5.00 | Sept. 1 '34 |
| Aug. 29 '34 | 5.35 | 5.00 | |
| Sept. 1 '34 | 48.00 | 45.00 | |

It further appears from the evidence that when petitioner went to respondent's office on September 1, 1934, there were outstanding three alleged assignments of $5.35 each, for which petitioner had received $5 in cash on each, all supposedly representing portions of petitioner's salary then earned and payable on that date.

Instead of demanding payment of all three obligations out of the salary, collected on that date and then in the possession of petitioner, of which they were supposed to represent parts to be collected by petitioner and turned over to respondent on that day, respondent knowingly and voluntarily permitted the part of the salary represented by the alleged assignment of August 29, to remain in petitioner's hands and to be used by him, and credited him with the payment of the other two obligations in a new transaction which may be thus portrayed:

| | | |
|---|---|---|
| New purported assignment of salary | | $48.00 |
| Charges thereon or discount | $ 3.00 | |
| Satisfaction of old assignments | 10.70 | |
| New money actually received | 34.30 | |
| | $48.00 | $48.00 |

Respondent contends that the old obligations were paid out of petitioner's collected salary before the new assignment was executed. But it is conceded that the whole matter was consummated on a single visit and practically at the same time, and as the result thereof petitioner left the office of respondent with only $34.30 more than when he entered, and that he left a new obligation of $48 and one of the old obligations for $5.35 unpaid.

The new obligation, regardless of its form, was, as a matter of fact, merely a renewal of $10.70 of the old account and a fresh obligation for the new amount received.

### Conclusions of Law.

The amount involved in this case is small, and viewed as an isolated case, it might not be considered of much significance, but as a matter of fact it involves an important principle and a practice which has greatly embarrassed the administration of the bankruptcy laws in this District, and which is working great hardship on poor and honest debtors. Many creditors, particularly those lending money at excessive rates of interest and those dealing in alleged salary assignments, which in most cases prove to be merely disguised loans at usurious interest, sometimes

amounting to as much as 240 per cent. a year, follow the practice of ignoring the bankruptcy court and virtually annulling its orders of discharge by coercive measures, taken after discharge, in the nature of suits in state courts on dischargeable debts, or threats of garnishment proceedings against, or of notices to employers of bankrupts which would result in loss of their employment; and by harassing them in many other ways. These discharged bankrupts are in many cases induced to renew such debts or pay them off rather than risk the danger of losing their employment or undergo the expense, which they cannot afford, of defending numerous cases in the state courts. In many instances, too, these debtors are ignorant of the law and unable to employ counsel to defend them in the state courts; and, relying on the efficacy of the judgments of discharge in this court, allow their cases to go by default in the State courts. In this manner they are made to pay out of their earnings since adjudication debts which have really been discharged in their bankruptcy proceedings, thus losing "the new opportunity in life and the clear field for future effort, which it is the purpose of the Bankruptcy Act to afford the emancipated debtor." Local Loan Co. v. Hunt, 292 U.S. 234, 245, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 93 A.L.R. 195.

It is this situation and these conditions which constitute the equity of petitions of this kind and which should cause this court to do what it can to stop such practices in defiance of its own orders and to make them effective and to afford to debtors the relief to which they are entitled under the bankruptcy law and orders of discharge, which the Supreme Court has said are "in every essential particular decrees in equity determining a status." Local Loan Co. v. Hunt, supra.

■ The obligation of August 29th, ceased to be an assignment of $5.35 of petitioner's salary, if it ever was such, and remained, or became, a mere loan, with security, if any, released, when respondent, on September 1st, knowingly and purposely permitted petitioner to keep and to use this amount of his salary, collected by him and then in his possession, which purported to be covered by the assignment. Even if the assignment was valid, being a partial assignment, it would be only an equitable interest or lien and was released or lost when respondent consented to the collec-

tion and use by petitioner of the fund. There was nothing left to which the lien could attach.

■ Furthermore, in this instance, since respondent consented to all that was done, there could be no fraudulent conversion of the money or liability for willful and malicious injury thereto, but the claim became a mere provable debt dischargeable in bankruptcy.

■ The cancellation of the other two alleged assignments, amounting to $10.70, and the execution, at practically the same time, of a new obligation for $48 by which petitioner was enriched only to the extent of $34.30, amounted, in intent and in fact, merely to a renewal, with new security, of the obligation of $10.70 (Ga.Civ.Code 1910, § 3459; Ga.Code 1933, § 25-214; Tennessee Finance Co. v. Thompson (C.C. A.6th) 278 F. 597; Parsons v. Fox, 179 Ga. 605, 176 S.E. 642; Wilson v. Etheredge, 174 Ga. 386, 162 S.E. 707; Hinton v. Mack Purchasing Co., 41 Ga.App. 823, 155 S.E. 78; Jackson v. Bloodworth, 41 Ga. App. 216, 152 S.E. 289), and an obligation for the additional sum of $34.30 new money and $3 interest or discount or service charge, whatever it may be termed.

The fact that, before the new obligation was entered upon, petitioner may have been required to settle up the two old assignments and then was handed different money in consummating the new transaction is immaterial and a frivolous distinction. Parsons v. Fox, 179 Ga. 605, 176 S.E. 642.

■ The validity, amount, and enforcement of the security was exclusively for the determination of the bankruptcy court, and no proceedings thereon could be brought in any other court unless authorized by the bankruptcy court. If the respondent chose to ignore the bankruptcy court and to refuse to prosecute its claim of an equitable lien in said court, or to obtain its permission to prosecute it in another court, and silently and without objection, sat by and saw the bankruptcy court administer a fund, part of which it claimed, it lost by its laches any equitable lien it may have had.

There is left for consideration only that part of the $48 obligation which represents new money delivered to petitioner, and the question is, what is the nature of this obligation, whether it is a debt provable and dischargeable in bankruptcy, as claimed by

petitioner, or a legal assignment of a portion of petitioner's salary, recoverable by respondent in the suit it filed in the justice of peace court, in spite of the bankruptcy proceeding and the discharge granted petitioner.

An examination of the state court proceedings discloses that it is a suit against petitioner for money alleged to have been sold to respondent and collected by petitioner and appropriated by him to his own use, in violation of his contract and in violation of his trust against the rights of respondent.

 It is clear from the evidence that the alleged assignment was a partial assignment of the salary in question, which amounted to $60, while respondent's claim is for only $48, and, if valid, vested in respondent only an equitable interest therein and did not vest in the assignee such title to the portion of the debt assigned as could be enforced in a common law action, unless the debtor assented to the assignment, (Rivers v. Wright & Co., 117 Ga. 81, 43 S.E. 499), nor asserted in the justice of peace court, since such court has no equitable jurisdiction. The employer in this case did not assent to the assignment and never was, in fact, given notice of it.

 The salary in question was scheduled as an asset, and, upon adjudication, came regularly into the custody of the bankruptcy court for determination of all interests in and rights and priorities to said fund, and for proper disposition thereof. The bankruptcy court had exclusive jurisdiction to determine all of these questions. Merchants' & Mechanics' Bank v. Sewell (C.C.A.5th) 61 F.(2d) 814.

 "The filing of the petition is a caveat to all the world and in effect an attachment and injunction" (May v. Henderson, 268 U.S. 111, 117, 45 S.Ct. 456, 459, 69 L.Ed. 870, quoting Mueller v. Nugent, 184 U.S. 1, 14, 22 S.Ct. 269, 46 L.Ed. 405), and all parties who claimed an interest in said salary were required by the bankruptcy law to prosecute same in the bankruptcy court, or to obtain its permission to do so in some other court. Respondent, with not only constructive but with actual notice, refrained from presenting its claim to the bankruptcy court, and, after discharge, undertook, without permission of the bankruptcy court, to prosecute its claim in the justice of peace court. This it cannot do, whether the transaction be

considered a loan secured by the assignment or as a valid partial assignment, unless the facts bring its claim within the exceptions of section 17 of the Bankruptcy Act (11 U.S.C.A. § 35).

"Upon adjudication, title to the bankrupt's property vests in the trustee with actual or constructive possession, and is placed in the custody of the bankruptcy court. * * * It follows that the bankruptcy court has exclusive jurisdiction to deal with the property of the bankrupt estate. * * * When this jurisdiction has attached, the court's possession cannot be affected by actions brought in other courts." And the bankruptcy court having acquired "jurisdiction is competent to hear and determine all questions respecting title, possession, and control of the property. * * * Thus, while valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved, it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree the method of their liquidation. * * * The exercise of this function necessarily forbids interference with it by foreclosure proceedings in other courts, which, save for the bankruptcy proceeding, would be competent to that end." The bankruptcy court may, in ancillary proceedings, enjoin the proceedings in the State court. "Such injunctions are granted solely for the reason that the court in which foreclosure proceedings are instituted is without jurisdiction, after adjudication of bankruptcy, to deal" with the property "save by consent of the bankruptcy court." Isaacs v. Hobbs Tie & T. Co., 282 U.S. 734, 737, 51 S.Ct. 270, 271, 75 L.Ed. 645.

"The jurisdiction in bankruptcy is made exclusive in the interest of the due administration of the estate and the preservation of the rights of both secured and unsecured creditors. This fact places it beyond the power of the court's officers to oust it by surrender of property which has come into its possession. * * * Indeed, a court of bankruptcy itself is powerless to surrender its control of the administration of the estate." Id., 282 U.S. 734, at page 739, 51 S.Ct. 270, 272, 75 L.Ed. 645; see, also, Gross v. Irving Trust Co., 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215.

If respondent had duly presented its claim in the bankruptcy proceeding it would have been considered, and, if found valid

and prior to all other claims, would have been satisfied out of the fund to the extent of the debt, less usurious interest, if any, and only the excess would then have been set aside to petitioner as a homestead. Not having done so, it is now too late to claim a fund, or a lien on a fund which is no longer in existence.

But respondent contends that even though it may have lost the fund or the lien on the fund because of its dissipation, yet it is entitled to pursue petitioner in the state court and to satisfy any judgment it may obtain out of earnings acquired since the adjudication, on the theory that petitioner has willfully and maliciously injured respondent's property by converting the assigned portion of his salary to his own use; in other words, that respondent's claim is excepted from the discharge by the provisions of section 17 of the Bankruptcy Act.

I find from the evidence above set out and upon the authority of Home Bond Co. v. McChesney, 239 U.S. 568, 36 S.Ct. 170, 60 L.Ed. 444, and the other authorities above cited, that the obligation represented by this last purported assignment of $48 was, like the other three, not a valid assignment, but a usurious loan secured by the alleged assignment, and that, as in the case of the other obligations, respondent has lost its security of an equitable interest in the salary by its laches and its failure to prove same in the bankruptcy court or secure permission of said court to proceed in some other court, while the fund was still in existence; and that the whole claim or debt was discharged by the order of this court discharging petitioner of all his provable debts.

But even if the obligation were a valid assignment, such conversion of the fund in question would have to be shown as amounted to a willful and malicious injury thereto by petitioner, in order to bring the claim within the exception of section 17 of the Bankruptcy Act.

This has not been done, and no fraud has been shown. On the contrary, petitioner duly scheduled the salary as an asset and merely accepted it as a homestead when regularly set aside to him by the referee. The referee may have been in error in doing so, and doubtless would not have done so if respondent had presented the matter to him and asserted its equitable interest in the fund in the bankruptcy proceeding, as it should have done; but the acceptance of the fund under a ruling of court, unopposed and unreversed, could not be construed as fraudulent or as a "willful and malicious injury" to property.

From the foregoing it appears, and I find, that under any view of the case the claim of Central Investment Company was a provable debt dischargeable in bankruptcy and that it was discharged by order of this court and petitioner is entitled to the relief prayed for. There is another respondent in the case, L. R. Cox, but he was and is merely the agent and representative of the Central Investment Company. The foregoing findings and opinion have been rendered as referring to the Central Investment Company, but they shall be considered as applying also to respondent Cox, in so far as applicable to him as agent of said company.

It is clear that this court has authority to entertain the present proceeding and to determine the effect of the adjudication order, and to enjoin respondents from their threatened interference therewith, although this court is not bound to exercise this authority. Local Loan Co. v. Hunt, 292 U.S. 234, 241, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195. Whether or not the bankruptcy court will exercise such authority, is a matter to be determined from the facts in the particular case, as every case must stand upon its own facts. I find, however, that this case is one in which this court should exercise its authority.

Whereupon it is considered, adjudged, and decreed that respondents, Central Investment Company, and L. R. Cox, be and hereby are permanently enjoined, as prayed in the petition, from further prosecuting or aiding in the prosecution of the said suit filed by the Central Investment Company in the said justice of the peace court of the 531 District G. M. Fulton county, state of Georgia, and from in any way attempting to collect said claim of respondent Central Investment Company on the two alleged assignments set out in said suit, or annoying him with respect thereto.