**Curtis WILLIAMS, Petitioner,**

v.

**COLONIAL DISCOUNT COMPANY, Defendant.**

**No. 37935.**

United States District Court
N. D. Georgia,
Atlanta Division.
April 3, 1962.

T. B. Higdon, Atlanta, Ga., for plaintiff.

J. Sam Plowden, Atlanta, Ga., for defendant.

HOOPER, Chief Judge.

## STATEMENT OF THE CASE.

Curtis Williams, previously adjudicated a bankrupt in this court, and having obtained his discharge brings this action against Colonial Discount Company, a lending corporation who was listed in the bankrupt's schedules as a secured creditor. Plaintiff is a Negro laborer with a considerable family and earning moderate wages. Defendant, holding a judgment against petitioner which was obtained in a Georgia state court, is contending that the judgment in fact is based upon a malicious injury to the plaintiff's property by defendant and therefore not dischargeable in bankruptcy, and also insists that the judgment obtained by plaintiff against defendant in the State court is an adjudication of that fact and is res judicata against the plaintiff in this action.

Petitioner on the other hand contends that not only was there never any malicious injury done by petitioner to said property but there was never any actual conversion of the same; that the automobile covered in the trover suit by defendant against plaintiff was not even technically converted by the bankrupt, much less maliciously injured by him and that the furniture allegedly converted by the bankrupt had been set aside to the bankrupt in the bankruptcy proceedings as a homestead and never converted.

Upon its facts the case is rather involved and this Court has had great difficulty in connection with a motion for summary judgment filed by each party in determining which facts shall be considered as being in the record and which statements of alleged facts in the briefs of each counsel are considered to be admitted as the record consists of a stipulation of facts signed by counsel, affidavits of various parties, and unconfirmed statements of facts in the briefs, some of which are inconsistent. This situa-

tion exists despite the fact that the Court has in hand many briefs from each side and has held a number of hearings and conferences. In view of the above this Court is making Findings of Fact, same to be served upon counsel for each side and an opportunity given to each counsel to object to any of these Findings and to make any suggested additions, amendments or corrections thereto, to be later passed upon by the Court, after which a final judgment will be rendered. Meantime, restraining order heretofore issued by the Court preventing defendant from running garnishments on plaintiff's wages remains in effect.

## FINDINGS OF FACT.

1—On August 6, 1958 Curtis Williams, petitioner, executed a promissory note and bill of sale to secure debt to defendant Colonial Discount Company, Inc., covering a Mercury automobile and certain household goods, same being duly recorded pursuant to Georgia law. Previously however, petitioner had executed to Bond Finance Company a note and bill of sale conveying the same Mercury automobile and also certain household goods, being the same properties subsequently conveyed to Colonial as aforesaid, and the Bond bill of sale was recorded February 4, 1958 prior to Colonial transaction. This bill of sale to Bond was not put in evidence at the trial in the Civil Court of Fulton County when Colonial sued Williams and while Colonial had no actual knowledge of the Bond security deed it had constructive knowledge by virtue of its recording.[1]

2—Petitioner filed a voluntary petition in bankruptcy on March 21, 1960 and was adjudicated a bankrupt. In his schedules Colonial was listed as a secured creditor in the amount of $1,074.80 secured by the Mercury automobile (valued at $700.00) and the household furniture. Colonial received due notice but did not participate nor file a proof of claim in bankruptcy. It is stipulated as follows:

"At the first creditors' meeting petitioner stated he was surrendering all of his right, title and interest in his scheduled assets to his creditors, except equity in television set, a watch and ring ($25.00) and in household furniture ($180.00) which he claimed as homestead exemption. He listed the Mercury car as under two mortgages and claimed no equity in it. No Receiver was appointed who could accept bankrupt's surrender."

No receiver being appointed the above assets were left free for appropriate action in the State courts.

3—Williams received his discharge in bankruptcy on June 16, 1960, no objection having been filed.

4—On September 20, 1960 Colonial filed against Williams in the State court an action in trover alleging that petitioner was then in possession of the Mercury automobile and said household goods. The petition in trover is not made a part

---

1. Just here it should be observed that Georgia has rather peculiar laws regarding mortgages and bills of sale to secure debt, as regards both real estate and personalty. A mortgage in Georgia is considered only as a lien made in passing title, whereas a bill of sale to secure debt to personalty (and a deed to secure debt to realty) have the legal effect of the old common law mortgage vesting title in the grantee. It therefore follows that when Williams gave to Bond a deed to secure debt to his automobile and furniture and subsequently gave to Colonial a second instrument conveying the same property said last-named instrument could not convey title to Colonial for it was outstanding in Bond. Regardless of the above, however, the State court did in trover suit find that title was in Colonial and had been converted by Williams. A trover suit in Georgia adjudicates title to the property and grants a judgment that there has been a conversion of the property by the defendant. See Berry v. Jackson, 115 Ga. 196, 41 S.E. 698. Such a judgment however, does not necessarily adjudicate whether the conversion of the property was a technical one or under such circumstances as might render the defendant guilty of a malicious tort, not dischargeable in bankruptcy.

of the record in this case but counsel have stated to the Court at a hearing that it was in the usual form of such suits as printed by the Civil Court of Fulton County and displayed to this Court by counsel, same making no allegations as to any alleged malicious damage to property, but merely setting forth description of the property, its value, a demand and refusal and prayers for judgment.[2]

In this action defendant filed an answer October 20, 1960 denying he was in possession of the property and alleging his adjudication in bankruptcy, his alleged discharge from the obligation, and that he had surrendered to the Bankruptcy Court and his creditors all of said property except that portion set aside to him as a homestead exemption. He denied that he had refused to deliver the property and expressed willingness to surrender to petitioner the television set, allegedly the only property he could deliver. Contending that his discharge in bankruptcy barred any money judgment by defendant he did not contest the defendant's right to the property.

5—At the trial of the trover suit the bill of sale to Colonial, the schedule of petitioner's bankruptcy proceedings and petitioner's discharge in bankruptcy were put in evidence. Colonial's manager testified that demand had been made on petitioner for return of said property on March 1, 1960 and that it had not been returned. No evidence whatsoever was introduced on said trial however, to the effect that there had been any intentional conversion of the property nor any malicious tort to the same. Williams at first testified that the Mercury automobile had been taken by Bond under the first mortgage and was not in his possession and that he was willing to surrender to Colonial the television set. He stated Colonial had a first lien on the automobile but this evidence was in error (see stipulation as to Bond above). (Brief of evidence on said trial included in the record).

6—It is quite important to note that, while it is true Colonial obtained a judgment against plaintiff in the Civil Court as against the latter's plea of discharge in bankruptcy, there is nothing contained in the petition in that court nor in the evidence on the trial, nor in the judgment of the court indicating to the slightest degree that Williams had ever been guilty of any malicious tort to the property of Colonial; on the other hand all of the facts and circumstances adduced in this record show positively that Williams has never done any act whatsoever denying right of Colonial, but has continuously acknowledged the same as evidenced by his statements at the meeting of creditors and his willingness at all times to deliver to Colonial any property that he could deliver.

7—In a brief filed by Counsel for Williams on August 9, 1961 it is stated that Williams at the first meeting of creditors in the bankruptcy proceedings stated:

"The Mercury automobile engine was bursted and the car was at a repair garage. No Receiver was elected or Trustee appointed and petitioner's property was left in his possession. On or about May 1, 1960 Bond Finance Company repossessed the car on its bill of sale of January 27, 1958."

These facts however, do not appear in the record but the Court will entertain a motion in behalf of Williams to put them in the record if desired.

The same brief also recites "petitioner at the trial tendered the property (except the automobile which had been repossessed by the holder of the first lien) to defendant."

What is said above applies to this allegation.

2. Under Georgia law plaintiff in such cases may elect on the trial to take the actual property itself, or may elect to take its highest proven market value between the date of the conversion and the date of the trial, same being a money judgment.

■ 8—Williams filed in the State court a motion for a new trial which was overruled and he did not pursue any further his appeal in that case. His reasons are fully set forth in an affidavit filed in this case on March 29, 1962 together with brief of counsel to the effect that at the time in question on account of his poverty he was not able to pursue his appeal, one reason being that it would have been necessary for him to have furnished a copy of the record in order to do so. He could not pay for the record, stating

"a summons of garnishment had been issued on the judgment followed by a second and third one, under which petitioner's wages were tied up. This left petitioner without any means of support except such advances as his employer was willing to make."

The long and expensive procedural route which Williams would have had to take following the overruling of his motion for a new trial in order to finally adjudicate the questions involved are detailed in the record and need not here be repeated. Apparently however, the courts of Georgia at that time might have been adverse to his claims, but subsequently as hereinafter pointed out, might at this time favor his claims. At any rate to have obtained a Federal ruling as to his dischargeability in bankruptcy (assuming that a malicious tort was actually involved in his litigation) it would have been necessary for him to have gone through the Georgia Court of Appeals, then by certiorari to the Supreme Court of Georgia (an expensive route and one in which the writ is rarely granted) and then by certiorari to the United States Supreme Court. As pointed out below these circumstances in the opinion of this Court are sufficient to relieve petitioner from having taken such an appeal even if this Court should be held in error as to the non-necessity of the same.

### ORDER OF COURT.

It is ordered that the above and foregoing six pages of Findings of Fact be served by the Clerk on counsel for each party and that each party shall within ten days hereafter file with the Clerk any objections, deletions or additions desired to be made in the same, whereupon the Court will then pass such other order and judgment in the case as may seem appropriate.

### AMENDMENT TO FINDINGS OF FACT.

This Court by Order of April 3, 1962 found a number of Findings of Fact but gave opportunity to counsel for each side of the case to make objections thereto, which has been done by each counsel. Request to amplify the Findings of Fact is denied. However, there are some minor corrections to be made.

1—The final bill of sale executed by Williams to Colonial Discount Company was dated August 10, 1959. See Stipulation of Fact, Paragraph 2.

2—In reference to Finding of Fact No. 4 it is true the petition in trover did allege a conversion of the property in question but it did not allege a malicious injury to the same.

3—As to Finding of Fact No. 8 concerning Williams poverty, the Court strikes the language

"one reason being that it would have been necessary for him to have furnished a copy of the record in order to do so."

■ It is true as pointed out by defendant's counsel herein, that Crystal Laundry and Cleaners, Inc. v. Continental Finance & Loan Company, 97 Ga. App. 823, 104 S.E.2d 654, was decided May 29, 1958, prior to the action in the Civil Court of Fulton County. This Court takes judicial cognizance however, that the Georgia Supreme Court rarely grants applications for certiorari from the Georgia Court of Appeals, and this fact is apparent by a reading of the records of said courts. This Court adheres to the Finding that Curtis Williams, a day laborer, was not financially able to bear the expense of court costs and attorneys fees necessitated by carrying his appeal from the Civil Court of Fulton

County through the Court of Appeals of Georgia and the Supreme Court of Georgia. Furthermore, if defense counsel in this case is correct as to his interpretation of the Crystal Laundry case, supra such legal procedure would have been of no avail. Except as noted, Findings of Fact made April 3, 1962 are adopted as correct.

## CONCLUSIONS OF LAW.

1—This Court has jurisdiction of this motion by Williams, a bankrupt who has received his discharge in bankruptcy, to prevent a creditor with judgment from seeking to enforce the same against the bankrupt in running garnishments against the bankrupt's wages, if in fact it appears that the debt in question is a dischargeable debt. Local Loan Company v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230.

2—Colonial Discount Company is earnestly contending in this case that a judgment in a Georgia court based upon a trover suit is not dischargeable in bankruptcy. Not only is Colonial interested in that question but apparently a large number of corporations engaged in small loans to laboring people are vitally interested in establishing the non-dischargeability of such a judgment. By consent of this Court a brief of law seventeen pages in length has been filed in behalf of "parties at interest, not parties of record, in support of the motion for reconsideration." That is to say the motion to reconsider the Order of this Court in refusing to dismiss Williams' petition, this brief citing many cases of the Georgia courts which counsel contend establish the contentions of these lenders. However, the petition of Williams and his counsel is supported by decision of the United States Supreme Court in the case of Davis v. Aetna Acceptance Co., 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393, written by Justice Cardozo. Headnote 2 of that opinion reads as follows:

"Section 17(a) of the Bankruptcy Act, which excepts from discharge liabilities for 'willful and malicious injuries' to the property of another,

does not embrace a technical conversion, committed against the mortgagee of personal property by the mortgagor in possession, by an unauthorized sale, if the act was not in fact wilful or malicious but done innocently in the honest though mistaken belief that authority to sell existed. P. 331."

There, as here,

"the respondent contends that the petitioner was liable for a wilful and malicious injury to the property of another as the result of the sale and conversion of the car in his possession."

The Court stated:

"There is no doubt that an act of conversion, if wilful and malicious, is an injury to property within the scope of this exception. * * * But a wilful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without wilfulness or malice. * * * In these and like cases, what is done is a tort, but not a wilful and malicious one."

In that case the Supreme Court observed:

"Turning to the findings here, we see that wilfulness and malice have been unmistakably excluded."

In like manner this Court on account of facts stated above finds that wilfulness and malice have been excluded.

The Georgia Court of Appeals in the case of Crystal Laundry & Cleaners, Inc. v. Continental Finance & Loan Company, 97 Ga.App. 823, 104 S.E.2d 654, expressly followed the case above cited, stating that that case

"takes precedence of all cases in Georgia decided by the Supreme Court of Georgia and by this court prior to its date."

Therefore, many citations of authority in behalf of Colonial which precede the

**368**

two cases above cited are not binding upon this Court.

3—The greatest difficulty this Court has faced in this matter concerns the contention by Colonial that Williams is barred from obtaining redress at the hands of this Court on account of the judgment rendered against him in the Civil Court of Fulton County as against his defense filed therein in which his discharge in bankruptcy was set forth.

There is ample authority to the effect that when an issue has been thoroughly tried out between the parties in a State court a person defeated in the State case can not then relitigate the same issues in the Bankruptcy Court. Among the cases cited by Colonial on this point is the case In re Devereaux, 2 Cir., 76 F.2d 522, where it appeared a State court denied the bankrupt's application to have his discharge in bankruptcy adjudicated as a bar to the collection of a judgment, the Court ruling that the Bankruptcy Court had no jurisdiction to relitigate the issue and enjoin the enforcement of the State court judgment.

Research by this Court discloses another decision to the same general effect. Otte v. Cooks, Inc., 113 F.Supp. 861 in which a district judge ruled that the question whether a particular claim is barred by an order of discharge is not a matter without the exclusive jurisdiction of the Bankruptcy Court, but may be decided by a State court, in which event it will not be relitigated despite the decision in Local Loan Company v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230.

In this case however, it does not appear that the issue of malicious damage to the property was in fact litigated between these parties in the State court.

In the first place no such issue appears in the petition, the answer or the evidence in the case.

In the case of Swift & Company v. Bullard & Son, 3 F.2d 814 (D.C.) a similar situation arose and Judge Sibley writing the opinion pointed out the following:

"Subsection 2, in its original form, applied only in cases of 'judgments for willful and malicious injuries.' If judgment was not pronounced upon such a cause of action, the exception could not apply * * * it is still necessary that a similar cause of action be indicated by the original or amended pleadings before a court of record should adjudicate that a discharge is not a bar because of this exception. * * * The litigants have made no question on the pleadings. But the proven facts lead to the same result."

So, in the instant case, malicious injuries were not referred to by the pleadings or the evidence.

Furthermore, it is well-established that under such circumstances the Bankruptcy Court may determine just what were the issues and implications of the action in the State court. It has been said that although the pleadings in the State court might show willful and malicious injury, if the rest of the record negatives such character, the judgment is dischargeable. See Collier on Bankruptcy, 14 Ed., Vol. 1, p. 1617, containing the following:

"Where a judgment has been obtained, the court, which is called upon to determine whether the judgment is dischargeable, may resort to the entire record to determine the wrongful character of the act."

To the same effect see opinion by the late Judge Marvin Underwood, distinguished member of this Court, in In re Tillery, 16 F.Supp. 877, dealing with the judgment in which the pleadings did show some reference to intentional and malicious misconduct. He pointed out these allegations

"are merely broad conclusions unsupported by allegations of fact,"

and held they need not be considered.

He concluded:

"the record and evidence in this case show that bankrupt did not willfully and maliciously injure Huff's property. The judgment against bankrupt, therefore, was a provable debt dischargeable in bankruptcy. The evidence and record further show

that the judgment against defendant is being prosecuted in the state courts by the issuance of garnishments and that Huff threatens and intends to continue to run periodic garnishments against bankrupt's wages until the judgment is satisfied and to otherwise harass bankrupt and put his job in jeopardy. In this situation bankrupt is entitled to relief, and this court has jurisdiction to grant same" (see p. 879).

See also In re Cleapor, D.C., 16 F. Supp. 481 by the same judge, in which he points out the difficult problems frequently arising out of efforts by the loan companies to enforce their claims against bankrupts after their discharge.

4—With further reference to the question as to whether or not Colonial's suit in the State court shows a non-dischargeable debt see Personal Industrial Loan Corporation v. Forgay, 240 F.2d 18 (10 Cir.). It was there pointed out that the petition was not sufficient to state a cause of action sounding in fraud so as to make the judgment non-dischargeable even though there was a default judgment rendered. It also made reference to failure of the bankrupt to exhaust his remedy in the State courts, stating as follows:

"The Supreme Court in the Hunt case and this Court in the Morrow case [State Finance Co. v. Morrow, 10 Cir., 216 F.2d 676] point out that a bankruptcy court in considering whether it should exercise its equitable discretion should give special attention to small debtors to the end that they are not harassed by being dragged through expensive state court proceedings. It is urged here that appellee had not exhausted his remedy in the state courts by failing to appeal from the judgment in the city court overruling its motion to vacate its judgment. Such a proceeding would entail delay and costs which the discharged debtor could ill afford and, as pointed out in the Hunt case, would in a large part deny him the benefits of an adjudication by the bankruptcy court."

See also The General Protestant Orphans' Home v. Ivey, 6 Cir., 240 F.2d 239; Davison-Paxon Company v. Caldwell, 5 Cir., 115 F.2d 189, 133 A.L.R. 432; Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (as to the right of this court to look behind said judgment).