Paul J. SHERIDAN

v.

UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, LOCAL NO. 626, an Unincorporated Association, Appellant.

No. 13701.

United States Court of Appeals Third Circuit.

Argued Dec. 22, 1961.

Decided July 2, 1962.

Joseph Donald Craven, Wilmington, Del., for appellant.

Joseph T. Walsh, Wilmington, Del., for plaintiff-appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

Does the Labor-Management Reporting and Disclosure Act of 1959 [1] afford a remedy to a business agent of a union who has been removed from his elected office prior to the expiration of its term by the vote of the membership of the union?

That issue, of first impression at the appellate level, is presented on this appeal from the judgment of the District Court [2] granting money damages to the plaintiff, Paul J. Sheridan, against the defendant, the United Brotherhood of Carpenters and Joiners of America, Local No. 626 ("Union") following his ouster as its business agent.

The facts, as found by the District Court, may be stated as follows:

Plaintiff was elected business agent of Union on June 17, 1959, for a two-year term. One of his duties as business agent was to assign jobs, when available, to unemployed union members. A member could not obtain employment on a job at which Union's members were working unless plaintiff issued him a referral slip.

On September 26, 1960, Richard Toy, Union's shop steward on a construction project in New Castle County, Delaware, telephoned plaintiff, requesting that several carpenters be assigned to that job. Toy, knowing that Albert Burke, a member of Union, wanted to work at the project, asked that Burke be included among those to be assigned. Plaintiff replied that he would not honor this latter request because Burke had not been out of work long enough. The next day Burke, who knew that Toy had requested plaintiff to assign him to the job, came to the union hall and asked plaintiff for a referral slip. Plaintiff refused, stating that Toy had not asked for Burke and that the job had been filled. Although Burke had been unemployed for two weeks, plaintiff designated one William Lloyd for the job; Lloyd had been out of work only three days. Burke then left and saw Toy, who verified the fact that he had requested plaintiff to assign Burke to the job. Believing that plaintiff had prevented him from securing employment, Burke returned to the union hall, where he "pushed" or "knocked" plaintiff. Later that day plaintiff had Burke arrested, and on October 21, 1960, in the Municipal Court of Wilmington, Delaware, Burke was convicted of having assaulted plaintiff. The District Court found that plaintiff was acting in a "non-official capacity" when he had Burke arrested and prosecuted.

On October 6, 1960, Burke filed charges within Union alleging that plaintiff had violated sections 43L and 56A of the Constitution and Laws of the United Brotherhood of Carpenters and Joiners of America, the parent brotherhood of which Union is a local affiliate. These sections read:

Section 43L: "No member shall injure another member by undermining such member in prices or wages, nor commit any wilful act by which the reputation of the member is injured or employment jeopardized."

Section 56A: " * * * A member must exhaust all resources allowed by the Constitution and Laws

---

1. 73 Stat. 519, 29 U.S.C.A. § 401 et seq.

2. The Opinion of the District Court is reported at 194 F.Supp. 664 (D.Del.1961).

Earlier Opinions granting plaintiff's motions for temporary restraining order and preliminary injunction are reported at D.C., 191 F.Supp. 347 (1961).

of the United Brotherhood before taking a case to the civil courts."

Plaintiff was tried on these charges before a union trial committee on the evening of November 2, 1960. Burke, in testifying before the committee, made two contentions in support of the section 43L charge; first, that by keeping him off the job plaintiff had "jeopardized" his employment; and second, that by bringing the Municipal Court action plaintiff had injured Burke's reputation so that he could not secure a Civil Service or Government job. In support of the charge under section 56A, Burke contended that plaintiff had carried his grievance with him to the Municipal Court before exhausting all the resources within the union provided by the Constitution of the United Brotherhood. The trial committee found plaintiff guilty of violating both sections. Later that same evening at a meeting of Union's membership, the members, after receiving a report of the

trial committee's action, voted to remove plaintiff from office. The trial judge found that "this penalty was imposed because of the two offenses and not with respect to either of the two offenses separately." Plaintiff has received no compensation as business agent since his removal on November 2, 1960.

On January 4, 1961, plaintiff instituted this suit, seeking both reinstatement as business agent and recovery of back wages and employment benefits since his removal from office.[3]

Section 101(a) (4) of the Labor-Management Reporting and Disclosure Act provides that "no labor organization shall limit the right of any member thereof to institute an action in any court * *."[4] Section 609 provides that "it shall be unlawful for any labor organization * * to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled

3. Plaintiff also sought and obtained a temporary restraining order, followed by a preliminary injunction, preventing Union from electing a new business agent. 191 F.Supp. 347. Union's president had been acting as business agent since plaintiff's removal, and an election for a successor had been scheduled for January 6, 1961.

In the complaint plaintiff alleged, not only that he had been removed from office, but also that he had been suspended from membership. In the Opinion of the District Court granting plaintiff's motion for preliminary injunction, the trial judge stated:

"Plaintiff was temporarily suspended as a union member as appears from my prior opinion [on plaintiff's motion for temporary restraining order]. However, since the evidentiary status with respect to such suspension is different from that before the Court when the application for the temporary restraining order was heard, that aspect of the matter is not the subject of this opinion." 191 F.Supp. at 352 note 3.

"The evidentiary status" to which the Court referred apparently resulted from an affidavit filed by Union stating that plaintiff's suspension as a member had been "lifted" on December 6, 1960. Plaintiff does not appear to have pursued this part of his claim thereafter in the

District Court, and no issue with respect to his suspension from membership has been raised on appeal.

4. Section 101(a) (4) provides, in pertinent part:

"Protection of the right to sue.—No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof * * *." 73 Stat. 522, 29 U.S.C.A. § 411(a) (4).

The District Court held that the proviso, which by its terms applies only to proceedings against labor organizations or their officers, does not apply to the Municipal Court action against Burke. 191 F.Supp. at 349.

under the provisions of this Act."[5] Section 609 is enforceable by a suit for "appropriate" relief under Section 102.[6] The District Court held that plaintiff, in having Burke arrested and prosecuted, was exercising a right vouchsafed to him by Section 101(a) (4), and that Union, by removing plaintiff from office because he had exercised this right, had "disciplined" him in violation of Section 609. The District Court considered it "inappropriate", however, to reinstate him as business agent, inasmuch as (1) "an untenable situation would be created if plaintiff were restored to office and the union membership were subjected to his decision in matters of importance when it did not want him" and (2) less than two weeks remained before the expiration of his term of office.[7] Since Union had introduced no evidence to show that plaintiff could have mitigated his damages by obtaining other employment, the District Court awarded plaintiff his full salary as business agent for the period from his removal on November 2, 1960, until the expiration of his term of office on June 16, 1961.

On this appeal Union contends, as it did in the court below, that the District Court lacked "jurisdiction" of the subject matter for these reasons: (1) The Act does not apply to a union-employee or officer relationship with the union; and

(2) Plaintiff failed to exhaust intra-union appellate procedures before starting the instant suit.[8]

This opinion will relate only to the first of the two points stated, viz., the sweep of the Act with respect to union members who are employees or officers of their union: that of Judge Hastie will deal with the second point, relating to exhaustion of intra-union remedies.

In support of its first point, Union urges that Title I of the Act, which contains the right-to-sue provision (Section 101(a) (4) ), protects the rights of union members as members and not as officers or employees of unions; that Union "had the right to discharge the Plaintiff for any reason which to its members appeared sufficient and that the Act conferred no jurisdiction on the District Court to inquire into the * * * reason for Plaintiff's removal from office"; and that "no employer must account to a Federal Court under any provision of the Act for discharging an employee." Plaintiff, on the other hand, contends that while "as a general proposition" it is true that the Act does not protect officers or employees of unions, jurisdiction nevertheless does exist here inasmuch as the disciplinary sanction of removal from office was imposed on him for his conduct as a member.

5. Section 609 provides:
"It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this Act. The provisions of section 102 shall be applicable in the enforcement of this section." 73 Stat. 541, 29 U.S.C.A. § 529.

6. Section 102 provides:
"Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the dis-

trict court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located." 73 Stat. 523, 29 U.S.C.A. § 412.
The words "this title", as used in Section 102, refer to Title I of the Act. Although Section 101(a) (4), the right-to-sue provision, is in Title I, Section 609 is not located in that title. The second sentence of Section 609, however, provides that Section 102 shall be applicable in the enforcement of Section 609. See note 5, supra.

7. The Opinion below was filed on June 5, 1961, and plaintiff's two-year term of office was due to expire on June 16, 1961.

8. The facts pertaining to this issue are set forth in the Opinions below. 194 F.Supp. at 667–668; 191 F.Supp. at 349–50, 353–355.

Initially, it must be pointed out that the parties have erred in labeling this as a jurisdictional issue. As we stated in Hughes v. Local 11 of International Ass'n of Bridge Workers, 3 Cir., 287 F.2d 810, 814 (1961), cert. denied, 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32 (1961), which also arose under the Labor-Management Reporting and Disclosure Act, "the well established * * * practice * * * has been that the assertion of a substantial claim under a federal statute gives a United States court jurisdiction of that claim even though that court may determine ultimately that no cause of action on which relief could have been granted was alleged." Accordingly, we will treat Union's contention as an assertion that plaintiff has failed to plead or prove a violation of the Act.

Plaintiff claims that he was exercising a right protected by Section 101(a) (4) when he had Burke prosecuted, and that Union disciplined him in violation of Section 609 by removing him from office for his having exercised this right. Union does not controvert the proposition that Section 101(a) (4) protects plaintiff's right to institute criminal proceedings against Burke. Our inquiry on this score is therefore narrowed to the question whether the removal of plaintiff from office was a form of "discipline" as that term is used in Section 609. As earlier noted, the Section declares it unlawful for a labor organization to "fine, suspend, expel, or otherwise discipline any of its members" for exercising a right protected by the Act. The word "discipline" is not defined in the statute. This term appears to have been selected as a catchall to cover various sanctions other than fine, suspension, and expulsion. But to say that a word is a catchall does not "define what it catches". Flora v. United States, 362 U.S. 145, 149, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960).

The language of the Section affords no support for the view that the term "discipline" encompasses removal from office. The three disciplinary sanctions that are specifically enumerated in that section—fine, suspension, and expulsion—manifest an intention by Congress to protect members *qua* members. Removal from office, on the other hand, is a sanction that can be directed only against the limited group of members who happen to be officers. We see no violation of Section 609 in plaintiff's removal from his office.

Neither does Section 101(a) (4), the right-to-sue provision, support plaintiff's claim that the Act protects his status as an officer. Section 101(a) (4) is part of Title I of the Act. This title, captioned "Bill of Rights of Members of Labor Organizations",[9] and particularly Section 101, are designed to protect the rights of union members. The rights are repeatedly described as the rights of "any member" or "every member". No mention is made of rights of union officers or employees. It is of particular interest to note that the right-to-sue provision of the bill that was originally passed by the Senate provided that a labor organization shall not limit "the right of any member *or officer* thereof to institute an action in any court. * * *" (emphasis added).[10] The corresponding provision of the bill that was subsequently passed by the House did not contain the word "officer".[11] In commenting on this difference between the Senate and House bills, a document prepared by Senator Goldwater's staff and inserted at his request in the Congressional Record states that "the Senate bill extends protection of the right to sue expressly to union officers." 105 Cong. Rec. 16487 (1959). The Conference Committee adopted the House version,[12] and accordingly Section 101(a) (4) as

9. 73 Stat. 522.

10. S. 1555, 86th Cong., 1st Sess. § 101 (a) (4) (1959), as passed by Senate, reprinted in Legislative History of the Labor-Managment Reporting and Disclosure Act of 1959, Vol. 1, p. 520.

11. H.R. 8342, 86th Cong., 1st Sess. § 101 (a) (4) (1959), 105 Cong.Rec. 15884 (1959).

12. The Conference Report is reprinted at 105 Cong.Rec. 18116–24 (1959).

finally enacted by Congress speaks only of the right of *members*, thus conforming to the terminology used in the other provisions of Section 101.

To be contrasted with the Title I rights are the provisions in Title IV relating to union elections. There, in dealing with candidacy for union office, the statute refers to the "right of any candidate", the right of "every bona fide candidate", and the obligations of a union to "any bona fide candidate".[13] Thus when Congress wanted to grant protection to a specific category of union members, appropriate language was used in the statute.

Several district court cases, although distinguishable on their facts from the case at bar, also support the view that plaintiff's status as business agent is not protected by the Act. Strauss v. International Brotherhood of Teamsters, 179 F.Supp. 297 (E.D.Pa.1959), was a case involving a union employee who had been discharged from his position as business agent. In denying reinstatement, Judge Clary there stated:

"* * * [Title I] deals with the *union-member* relationship and in no way supports jurisdiction of a suit involving the *employer* (union)-*employee* (business agent) relationship which is the essence of the present suit. Such a case turns more properly on the common law of employment contracts, or employment 'status' as a property right, matters which are outside the scope of Title I." 179 F.Supp. at 300.

In Jackson v. Martin Co., 180 F.Supp. 475 (D.Md.1960), where an elected union committeeman who had been removed from his position by the union's executive board sought to be restored to office, Chief Judge Thomsen denied relief, stating:

"* * * Title I of the Act * * * deals with the union-member relationship, not with the union-officer or union-employee relationships." 180 F.Supp. at 480.

See also Mamula v. Local 1211 United Steelworkers, 202 F.Supp. 348 (W.D.Pa. 1962); Kelly v. Streho, 42 CCH Lab. Cas. 24,127 (E.D.Mich.1961); Bennett v. Hoisting and Portable Engineers, Local 701, 207 F.Supp. 362 (D.Ore.1960).

Thus, neither under the "Bill of Rights" provisions of Title I, nor under Section 609, proscribing disciplinary sanctions against union members, is plaintiff's status as business agent protected by the Act. It is the union-member relationship, not the union-officer or union-employee relationship, that is protected.

Plaintiff does not wholly disagree with the proposition that the pertinent provisions of the Act deal with the rights of members *qua* members. It is his position, however, that inasmuch as he was acting in his capacity as an individual member rather than as business agent when he had Burke arrested, the "penalty" of removal from office was unlawful,[14] just as it would have been unlawful for Union to expel him from membership for his having had Burke arrested. What plaintiff overlooks, however, is the fact that an officer's conduct, whether in his individual or official capacity, affects the confidence reposed in him by the union membership, and his effectiveness as an officer.

Thus, a meaningful distinction cannot be drawn on the basis of the capacity in which plaintiff was acting when he had Burke arrested. The facts of the instant case illustrate quite clearly the invalidity

---

13. Section 401(c) of the Act, 73 Stat. 532, 29 U.S.C.A. § 481(c).

14. The District Court accepted this reasoning. Two other district courts have also followed this theory. Burton v. Independent Packinghouse Workers, 199 F. Supp. 138 (D.Kan.1961); Hamilton v.

Guinan, 199 F.Supp. 562 (S.D.N.Y.1961). In another case, Alvino v. Bakery and Confectionery Workers, 41 CCH Lab.Cas. 23,102 (D.D.C.1960), it was held, without discussion, that the defendant union, by removing and suspending the plaintiffs from their offices, had disciplined them for engaging in activity protected by the Act.

of such a distinction. Plaintiff himself, in an affidavit filed in support of his motion for preliminary injunction, recognized the important responsibilities of his office. His affidavit states:

"* * * [T]he duties of Business Agent involve the assigning of men to various construction projects and in such assignment the Business Agent is given wide discretion to determine the qualifications of the 1300 members of the Local 626 for particular jobs. The Business Agent is also given broad discretion in selecting job stewards and foremen for union projects. If a successor is elected to hold the office of Business Agent, even temporary, the members of Local 626 will regard this successor as a person of considerable authority and will no longer look upon Sheridan as a person of authority and responsibility in the Union."

The District Court, although holding that plaintiff's removal was illegal, nevertheless said:

"An untenable situation would be created if plaintiff were restored to office and the union membership were subjected to his decision in matters of importance when it did not want him. Internal bickerings and disagreements would almost certainly occur." 194 F.Supp. at 669.

Yet if we accepted plaintiff's contention, we would be holding that the Act made it unlawful for Union to rid itself of the "untenable situation" and "internal bickerings" that would result if "the union membership were subjected to * * * [plaintiff's] decision in matters of importance when it did not want him."

There remains this to be said. Plaintiff was removed from his office as business agent by the vote of the membership of Union. The most precious and critical ingredient of the democratic process is the right to select those who govern us and those who administer our affairs. The overriding purpose of the Labor-Management Reporting and Disclosure Act was to insure to members of unions their right to self-government and union democracy. The legislative history of the Act is replete with statements that its purpose was to return the control of unions to the rank and file members.[15] It has been said that "the

15. Remarks of Representative Landrum, who with Representative Griffin sponsored the substitute bill that ultimately prevailed:

"I would call to the Members' attention that the interim report of the McClellan committee found that there has been a significant lack of democratic processes in certain unions, that one-man dictatorships have thrived—in some instances for 20 to 30 years—and that through intimidation and fear, the rank-and-file union member has been deprived of a voice in his own union affairs." 105 Cong. Rec. 14342 (1959).

"One of the basic underlying principles of both the Wagner Act of 1935 and the Taft-Hartley Act of 1947 has been the rights of employees—under the first to be free from employer domination, under the second to be free from union domination. That further legislation, however, dealing with union democracy is needed in 1959 cannot be challenged. As one union official put it in his testimony:

"We believe that the control of the union by its membership is the best way to insure its democracy and keep the officers in line—I believe that the best demonstration of democracy in action is where the people directly handle their own union business.

"This the substitute bill seeks to accomplish, by insuring effective membership control." 105 Cong.Rec. 14343 (1959).

"It is a bill which would restore the control of union affairs to union members." 105 Cong.Rec. 14344 (1959). Remarks of Representative Griffin:

"[U]nions should be governed by, and should exist for the benefit of the union members—unions should not be the convenient vehicle or tool for despots and racketeers." 105 Cong.Rec. 15531 (1959). Statement appearing in the Senate committee report:

"It needs no argument to demonstrate the importance of free and democratic union elections. Under the National Labor Relations and Railway Labor Acts the union which is the bargaining representative has power, in conjunction with the employer, to fix a man's wages, hours, and conditions of employment. * * * The

election of officers is the heart of union democracy".[16] Title IV of the Act[17] deals specifically with the conduct of union elections and is designed to guarantee to union members their freedom of choice in the selection of their officers. Further, there is even a provision in the Act[18] enabling the members of a union to remove an officer under certain circumstances when the constitution and by-laws of the union do not provide adequate means for removal.

The judgment of the District Court will be reversed.

HASTIE, Circuit Judge (concurring in result).

I vote to reverse the judgment below, but for a reason different from those stated by Judge KALODNER.

In my view the right asserted by the plaintiff in this case under Section 102 of the Labor-Management Reporting and Disclosure Act of 1959 is limited by the proviso of Section 101(a) (4) authorizing a labor organization to require a member to utilize reasonable procedures, requiring not more than four months, for redress within the organization before taking a grievance to court. 73 Stat. 522, 29 U.S.C.A. § 411(a) (4). The appellee, Sheridan, brought the present suit without waiting a reasonable time for decision upon an appeal he had taken to higher union authority in accordance with a requirement of the constitution of the union. Therefore, this action should have been dismissed as premature.

In greater detail, Sheridan's own local had removed him from the salaried office of business agent. Section 56(a) of the union constitution requires that "a member must exhaust all resources allowed by the Constitution and Laws of the United Brotherhood before taking a case to the civil courts". The formalized union grievance procedure gave a discharged business agent in Sheridan's position the right of successive appeals to the General President and the National Executive Board. Failure to exhaust these intra-union remedies was asserted as a defense to this action.

The record showed and the court below found that his local removed Sheridan from the office of business agent on November 2, 1960. The duties of the business agent were temporarily assigned to the local president. On November 9th, Sheridan appealed to the General President. On November 30th, a representative of the national office conferred with Sheridan and received from him a complete file on the case. Shortly thereafter, the local decided that, on January 6, 1961, it would elect a "temporary" business agent to relieve the local president of that responsibility. Objecting to this proposed interim procedure, Sheridan filed the present action on January 4, 1961, demanding both his own reinstatement and an order restraining the local from electing a temporary business agent.

On these facts it is apparent that the present claim for reinstatement, or damages in lieu thereof, has been filed in derogation of the union grievance procedure which Sheridan himself had invoked. But the statute precludes a court from giving judicial relief to a union

Government which gives unions this power has an obligation to insure that the officials who wield it are responsive to the desires of the men and women whom they represent. The best assurance which can be given is a legal guaranty of free and periodic elections. The responsiveness of union officers to the will of the members depends upon the frequency of elections, and an honest count of the ballots." S.Rep. No. 187, 86th Cong., 1st Sess. (1959), 2 U.S.Code Cong. & Ad. News, pp. 2318, 2336 (1959) (a similar statement appears in H.Rep. No. 741, 86th

Cong., 1st Sess. (1959), 2 U.S.Code Cong. & Ad.News, pp. 2424, 2438 (1959)). And see 105 Cong.Rec. 17912 (1959) (remarks of Senator Ervin); 105 Cong.Rec. 17914–15 (1959) (remarks of Senator Mundt).

16. Cox, "Internal Affairs of Labor Unions Under the Labor Reform Act of 1959," 58 Mich.L.Rev. 819, 842 (1960).

17. Sections 401–404 of the Act, 73 Stat. 532, 29 U.S.C.A. §§ 481–483.

18. Section 401(h) of the Act, 73 Stat. 533, 29 U.S.C.A. § 481(h).

member who has not exhausted reasonable intra-union hearing procedures which the union provides and requires before resort to a court. Penuelas v. Moreno, S.D.Cal.1961, 198 F.Supp. 441; Aaron, The Labor-Management Reporting and Disclosure Act of 1959, 73 Harv. L.Rev. 851, 869–70. The correctness of this conclusion is strongly indicated by the scheme of the statute.[1] The limiting proviso in Section 101(a) (4) states that a union member "may be required" to exhaust intra-union procedures before resorting to litigation. It does not say who may impose that requirement. But the principal matter in the subsection is a prohibition against union interference with resort by its members to the courts, and that prohibition is qualified by the proviso stipulating that the exhaustion of reasonable intra-union remedies may be required. It is reasonable to read both the general restriction and its qualification as statements of what a union may or may not do. Indeed, I think any other reading of the language is artificial and unwarranted. In effect, Congress has said that a union may not restrict a member's resort to the courts except that it may require that the member first devote not more than four months to reasonable grievance procedures within the organization.[2]

The court below did not find the union requirement of appeal to its national hierarchy unreasonable. Indeed, the appellate procedure seems to have been clear and appropriate. In this case a national representative began an inquiry within three weeks after Sheridan's appeal to the General President. Sheridan filed his suit without waiting even two months, much less the four month period set out in the statute, for a decision by the General President. The only justification urged for this precipitate resort to the courts is the fact that the union was about to elect a temporary business agent pending final determination of Sheridan's grievance. But this prospect afforded no justification for rejecting the grievance procedure. There is no indication that the election of a temporary business agent by the local would have prejudiced Sheridan's pending appeal to national authority or would have interfered with any proper award of back pay for the period of alleged wrongful deprivation of salaried office. It has been suggested that the election of a "temporary" business agent would have made it more difficult for Sheridan to be reelected a business agent after the end of his term. But the likelihood of the local reelecting the man it had tried and dismissed for dereliction in office, assigning his duties to another officer, was, in any event, small indeed. Thus, no harm was threatened such as would justify removing the issue of wrongful dismissal into the judicial forum without waiting a reasonable time for the General President's decision on the controversy as submitted to him.

The foregoing analysis leads me to join Judge KALODNER in voting to reverse the judgment of the court below.

1. In pertinent part, Section 101(a) (4) reads:
"No labor organization shall limit the right of any member thereof to institute an action in any court * * *: *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: * * *."

2. In his dissenting opinion, Judge McLaughlin reads Detroy v. American Guild of Variety Artists, 2d Cir., 286 F.2d 75, cert. denied, 1961, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388, as holding that

Section 101(a) (4) makes it the function of the trial court rather than the union to decide whether to require an aggrieved union member to utilize his intra-union remedy before filing suit. It is true that a union's grievance procedures may be ignored if a court decides they do not constitute "reasonable hearing procedures" within the meaning of the proviso to Section 101(a) (4). In the Detroy case, the Court of Appeals was satisfied that the union's grievance procedures were unreasonably vague and time consuming. Thus, it cannot be said that the court would have felt free to relieve the union member of a reasonable union-imposed obligation.

McLAUGHLIN, Circuit Judge (dissenting).

Because the questions involved are of considerable importance within the framework of the 1959 Labor Management Act, 29 U.S.C.A. § 401 et seq., it is necessary that the facts be stated fully and carefully.

On September 6, 1960, Albert E. Burke was a member in good standing of appellant, Local 626, United Brotherhood of Carpenters and Joiners of America, Wilmington, Delaware. On that day Richard Toy, the union shop steward at a construction job, Kirkwood Highway in New Castle County, Delaware, telephoned appellee Sheridan, then business agent of the union, asking that three named carpenters including Burke, be assigned to that work. Sheridan said he would not assign Burke because he had not been out of work long enough. The next day Burke saw Sheridan at the union hall and asked for a referral slip for employment on the Kirkwood project. Sheridan refused; he claimed Toy had not asked for him; he told Burke the job had been filled. Though Burke had been unemployed two weeks, Sheridan gave William Lloyd the job; Lloyd had been out of work for only two days. Burke left and found Toy who verified that he had asked Sheridan for Burke. The latter returned to the hall.

The court found that Burke " * * * said he grabbed plaintiff by the lapels and 'pushed him pretty rough.' Plaintiff said that Burke knocked him off his chair to the floor and badly bent or broke his glasses. Plaintiff did not retaliate. Burke's action was caused by the belief that plaintiff had prevented him from securing employment. Later in the same day plaintiff had Burke arrested; and on October 21, 1960 Burke was tried and convicted of assault in the Municipal Court at Wilmington." On October 6th, Burke, acting within the union, preferred charges against Sheridan, alleging that he had violated Sections 43L and 56A of the Constitution and Laws of the parent Brotherhood. These read:

"43L. No member shall injure another member by undermining such member in prices or wages, nor commit any willful act by which the reputation of the member is injured or employment jeopardized."

"56A. A member must exhaust all resources allowed by the Constitution and Laws of the United Brotherhood before taking a case to the civil courts."

Sheridan was tried by the union Trial Committee on November 2, 1960. The district court found as facts that "In support of Sec. 43L charge Burke made two contentions: first, that plaintiff had jeopardized his employment by keeping him off the job, and second, by having caused the Municipal Court action to be brought, plaintiff had injured his (Burke's) reputation so that he could not get a Civil Service or Government job. In support of the charge under Sec. 56A Burke contended that plaintiff had carried his grievance with Burke to the Municipal Court before exhausting all of the resources within the union provided by the Constitution of the United Brotherhood. Plaintiff read a prepared statement in which he defended himself against both charges." That same night the Trial Committee reported to the union meeting it had found Sheridan guilty of violating both 43L and 56A. The membership voted to remove him as Business Agent. The penalty was imposed because of the two offenses and not with respect to either of them separately.

Thereafter Sheridan brought this suit against the union, alleging the latter's discharge of him was illegal. He asked for reinstatement as Business Agent and for payment to him of all wages and employment benefits since November 2, 1960.

The district court held that it had jurisdiction under the Labor-Management Reporting and Disclosure Act of 1959, Sections 102, 609, 29 U.S.C.A. §§ 412, 529. As stated it found in favor of the plaintiff who was allowed back pay to the expiration date of his term of office, June 16, 1961. Under Section 102 of the

Act the court, exercising its discretion, found in the word of the statute, that it would not be "appropriate" to reinstate plaintiff as Business Agent.

Appellant union advances the all purpose argument that the district court lacked jurisdiction because the Bill of Rights of the Act has no application to an employee-employer relationship. It also asserts that appellee failed to exhaust his intraunion remedies prior to instituting this litigation.

Section 101(a) (4) of the Act reads:

"No labor organization shall limit the right of any member thereof to institute an action in any court or in a proceeding before any administrative agency, irrespective of whether or not the labor organization, or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: And provided further, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition."

Section 102 reads:

"Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the dis-

trict court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

Section 609 reads:

"It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this Act. The provisions of section 102 shall be applicable in the enforcement of this section."

Under the first part of the charge Burke alleged that Sheridan had so *injured his reputation* by the police court action that " * * * he could not get a Civil Service or Government job." This finding of fact by the trial court is completely supported in the record. The union's recording secretary in his testimony agreed that as to this the substance of Burke's statement at the union hearing on Sheridan was " * * * that by the charges brought by Sheridan in the municipal court Burke could not now hold a Civil Service or Government job * * *." At the trial in the district court Burke was asked on cross-examination, "Now with respect to the charge how was your reputation jeopardized by what Mr. Sheridan did on September 27th?" and he answered, "Well, I certainly couldn't go back to this man and ask him for a job." It is uncertain whether Burke in the above meant that he could "not go back" because of the disgrace of being arrested that day. It does not seem that he could have been referring to Sheridan's refusal to furnish him a clearance for the job. There is nothing to indicate that the Kirkwood employer had ever heard of Burke. In any event what we are concerned with is the charge against Sheridan as made and interpreted by Burke at the union hearing. And that particular part of the charge cannot be said to accuse Sheridan as Business

Agent but as a citizen who was a member of the union. As such he had the express right under Section 101(a) (4) to institute that criminal cause. That right is not controverted by appellant.

The second part of the 43L charge was that Burke's *employment was "jeopardized"* by Sheridan's refusal to allow him employment at Kirkwood. (Emphasis supplied.) Just as clearly, this was directed at Business Agent Sheridan and not at Sheridan individually or at his union membership.

The 56A charge asserted that Sheridan had not exhausted "all resources allowed by the Constitution and Laws of the United Brotherhood before taking a case to the civil courts." [1] That, like the first part of the 43L charge, relates to Sheridan as a union member bringing his criminal charges against Burke. It has no connection with Sheridan as Business Agent.

At this stage it is necessary to pass upon appellant's contention that Sheridan had violated the statute in starting this action without first complying with the appellate procedure called for by the Brotherhood Constitution and Laws. I am unable to find any real holes in his appellate course of conduct after the union had removed him in endeavoring to bring his case before the President of the Brotherhood. He was found guilty of the charges on November 3, 1960. Four days later he wired the President protesting that action and saying that detailed letter would follow. The mentioned letter was sent November 9. A copy of this went to the local. The letter was informal but substantially an appeal. That same day Sheridan sent a letter to

the Recording Secretary of the Local reading:

"I am appealing the action of Local Union # 626 in removing me from Office of Business Agent, at meeting of November 2, 1960.

"I would like to call your attention to the requirement of the Constitution Section 57 Paragraph E—"

Section 57, Paragraph E of the Brotherhood laws requires the local union to forward to the President a copy of the charges, trial minutes and answer to the appeal. These were not so sent. On November 30, 1960, the district representative of the Brotherhood's National Office conferred with Sheridan and the latter gave him a complete file on the case, including copies of the charges and correspondence. The Brotherhood President had authority under 57F of the Constitution and Laws to decide this type of appeal on the papers before him where the union has not forwarded him the papers called for by 57E.

Finally on this point, appellant contends that Sheridan failed to comply with Section 57G of the Constitution and Laws. This reads, "All parties to an appeal to the General President are required to go before a Notary Public and make affidavit to the truth of their written or printed statements." Appellant's objection seems to be that since Sheridan did not have his letters of November 9th to the President and the local notarized his appeal was void. 57G does not say that or fairly imply it. There is no evidence of attempt to evade or avoid the required notarization; no evidence that it was not overlooked; no evidence that it would not have been readily attended to on notice of the omission. The fault is minor and was actually waived. [2]

---

1. The local was apparently construing the words "civil courts" in 56A of its constitution and laws as requiring Sheridan to exhaust all the union resources prior to proceeding in the criminal court against Burke. This would be in contravention of Sections 101(a) and 102 of the Act. To discipline Sheridan for bringing his criminal action first is directly opposed to Sections 609 and 102 of the Act.

2. The concurring majority opinion complains that Sheridan waited less than two months after November 9th before starting his civil suit. This is true but it is also true that he had facing him at the time a notice of a local meeting two days away for the purpose of electing a temporary Business Agent, the office which plaintiff insisted belonged to him. See Detroy v. American Guild of Variety Ar-

Under all the circumstances appellee adequately complied with the provisions of Section 56A of the Brotherhood Constitution and Laws. Consequently he was not precluded under Section 101(a) (4) from going forward with this litigation.

As we have seen, Sheridan was convicted by the union of the two charges. The minutes of the meeting show no distinction was made between the two pertinent parts of the first charge or between the first and second charges. As we have also seen, the first pertinent part of the first charge (Burke's reputation as affected by the criminal conviction) and the second charge (Sheridan going forward with the assault complaint before exhausting all union resources) are not against Sheridan as the Business Agent and officer of the local but for his acts as an individual member of the union. The verdict of guilty on both charges, though no distinction was made, must include that result on the second charge. Since it does and since the second charge is merely a corollary to the arrest and consequent damage to Burke's reputation

part of the first charge, there is an inference that the union found Sheridan guilty of that part of the first charge.

But we are given no valid clue as to what the Trial Committee decided regarding Sheridan's blocking of Burke's employment. Appellee's counsel argues that the trial itself was a confused attempt to discipline plaintiff for causing the arrest of Burke. The circumstance that the Trial Committee in effect requested the shop steward Toy not to appear at the trial lends strength to that thought. Toy was thoroughly familiar with the facts supporting the charge of discrimination. It is true also that nowhere in the charges does "Business Agent" appear; and that both of the charges refer to plaintiff as a "member" not as "Business Agent". Two other members of the local were tried during the November 2, 1960 session of the Trial Board at which Sheridan was tried. The results of those trials were read to the local at its meeting of November 20, 1960. As reported in the minutes these were identical for all three. The only differen-

tists, 286 F.2d 75 (2 Cir. 1961). As the Second Circuit there points out (p. 78), "The statute provides that any member of a labor organization 'may be required' to exhaust the internal union remedies, not that he 'must' or 'is required to' exhaust them. * * * We therefore construe the statute to mean that a member of a labor union who attempts to institute proceedings before a court * * * may be required *by that court* * * * to exhaust internal remedies of less than four months' duration before invoking outside assistance." (101(a) (4)). In the instant case, plaintiff took his appeal to the union's General President, the first level of the union's appellate procedure. Before the president chose to decide the matter, the local scheduled the new election to fill the vacancy temporarily. Because of this, although four months had not elapsed, *plaintiff was forced to file his district court suit.* The trial judge accepted that action as proper under the circumstances. There were two issues involved in Sheridan's dismissal: his misconduct in office and his municipal court *charges.* While a determination of the union's president might be of assistance to the court on the first question, it would not be helpful on the second which con-

cerned the union's right under the Act to discipline a member for bringing such an action. Also, the adverse effect upon the plaintiff's position in the union created by the forthcoming election was an element which had to be considered by the district court. From the evidence given at the time the interlocutory relief was sought, there was a probability that Sheridan would succeed in his suit. It was not until the later trial that for the first time the facts concerning Sheridan's misconduct in office came to light, and then only in the context of the overall merits of the claim. See Sheridan v. United Brotherhood of Carpenters, etc., 194 F.Supp. 664, 668–669 (D.Del.1961). The district court found "pressing need for the prompt adjudication of his [Sheridan's] rights" in the circumstances of the dispute as they existed prior to the trial on the merits. Sheridan v. United Brotherhood of Carpenters, etc., 191 F.Supp. 347 at 353 (D. Del.1961). Plainly under all the facts there was no abuse of discretion by the trial judge in his determination that Sheridan was rightfully in court under the 1959 Act. His decision was squarely in accord with the Detroy doctrine which is the sound law on this phase of the appeal.

tiation was in the type of punishment meted out. One was expelled from membership; the second was fined; and the third, Sheridan, was removed from office. *Whether intentionally or otherwise, we simply have not been informed by anything tangible in the record that Sheridan's preventing Burke from working was included in the Committee's finding of guilty.*

The union then argues that, assuming Sheridan was removed as Business Agent for having had Burke arrested, the district court would still have lacked jurisdiction of this litigation since it would mean reviewing grounds for discharge of Sheridan as a union employee. *On the record before us, Sheridan was discharged as Business Agent not for wrongful conduct in that capacity but because he, as a union member, had taken criminal action against his brother member without first going through union procedure. That is not actually, nor can it be successfully, controverted by the majority opinion.*

The particular chastisement ordered was available for use solely because Sheridan was the Business Agent. Had he been fined, suspended or expelled, the three courses specifically named in Section 609, there would have been no excuse at all for the majority position. Clearly, Sheridan would have been entitled to bring the criminal charges against Burke. It is only the particular type of discipline imposed that presents an opportunity of sorts to cast possible doubt upon the jurisdiction of the Act. Such doubt, if any, should disappear when it is considered that "fine, suspend, expel" comprise just about everything in the way of discipline a union local could inflict upon a member who did not hold office in the organization. What further ordinary sanction could be authorized is not readily conceivable. The strong indication remaining is that the phrase "or otherwise discipline" was designed to cover the unusual situations which might arise. Among those must be included the disciplining of a member, who held a union office, by depriving him of that office.

The majority opinion notes that the LMRDA does not impair the right of the membership of a union to remove an officer for any reason sufficient to it alone, that "an officer's conduct, whether in his individual or official capacity, affects the confidence reposed in him by the union membership, and his effectiveness as an officer." This is quite true but it has no bearing here. There was no attempt by the union's membership to review Sheridan's conduct to determine whether he should remain in office. The narrow function of the membership was to discipline Sheridan after and because he had been convicted by the union's trial board of specific charges based upon Sections 43L and 56A of the union's constitution. In convicting Sheridan of the 56A charge, the trial board was under the assumption, now conceded by the union to be erroneous, that a member of the union could be required to exhaust his internal union remedies prior to filing a criminal complaint. That charge has nothing to do with the employer-officer relationship between Sheridan and the union. The members of the union, also under the same wrong assumption and not disputing the propriety of the charges and convictions, voted to remove him from office. Had he not been an officer, as above stated they would have fined, expelled, or suspended him from membership. Because he was an officer, they chose to discipline him by stripping him of his office. The form of sanction does not change the fact that they were disciplining him because, as a member of the union, he was exercising a right protected by the LMRDA.

The reported decisions on this precise problem as yet are in the district courts. Burton v. Packinghouse Workers Union, 199 F.Supp. 138 (D.C.Ka. Nov. 22, 1961), involved the identical question, though arising under Section 101(a) (5) of the Act. The court there held "The rule, therefore, is that removal from office is discipline within § 101(a) (5) if the

misconduct charged is that of a member rather than that of an officer." In Salzhandler v. Caputo, 199 F.Supp. 554, 555 (S.D.N.Y. Aug. 3, 1961) plaintiff was a member and financial secretary of a union local. He circulated a written attack on the president of the local. He was tried as a member for violating provisions of the Brotherhood Constitution. He was convicted and " * * * as a result, been barred from his office as financial secretary of Local 442 and from participating in and voting at union meetings." He sued to enjoin alleged violations of equal rights and of freedom of speech and assembly provisions of the Labor-Management Reporting and Disclosure Act and for damages. The motion for preliminary injunction was refused, the court holding p. 557, that "Plaintiff has not shown that he is entitled to preliminary injunctive relief. Such a drastic remedy is inappropriate to the present posture of the case." Hamilton v. Guinan, 199 F.Supp. 562, 565 (S.D.N.Y. Nov. 22, 1961) is a later Southern District of New York opinion in which the court concluded it was without jurisdiction under the Act because the discipline was imposed on Hamilton as an officer of the union. The court, however, agreed with the earlier Salzhandler decision saying " * * * but since the discipline was imposed on plaintiff in part for acts taken as a member of the union, jurisdiction apparently would lie under section 412." [3] In another Southern District of New York suit under the Act, Rosen v. District Council 9, 198 F.Supp. 46 (S.D.N.Y. June 8, 1961), plaintiff was found by the union to have been associated with the Communist Party in violation of the union constitution and was prohibited from being a candidate for office for five years. A temporary injunction against interference with his right to run for office was denied. The Hamilton opinion (199 F.Supp. pp. 565, 566) in discussing this, states: "The court found that plaintiff had been given a full and fair hearing, in accordance with provisions in the union rules and with section 411(a) (5). The court did not discuss the issue of jurisdiction, but it is apparent that plaintiff had been disciplined for action he took as a member of the union, and thus sections 411(a) (5) and 412 were clearly applicable."

Strauss v. International Brotherhood of Teamsters, 179 F.Supp. 297 (E.D.Pa. 1959) and Jackson v. Martin Co., 180 F. Supp. 475 (D.C.Md.1960) are cited to the contrary but *neither of those opinions dealt with removal of an officer for disciplinary reasons.* Mamula v. United Steelworkers, 304 F.2d 108 (3 Cir. 1962) and Bennett v. Engineers Local 701, 207 F.Supp. 362 (D.Ore.1960), have no application to this appeal. The only other decision listed is Kelly v. Streho, 47 LRRM 2609 (E.D.Mich.1961). While its import is not too clear the holding there does state " * * * That the legislative history * * * clearly shows that Title 1, Section 101(a) (5) secures safeguards *against improper disciplinary action against union members, as members, but not as officers or employees of the union.*" (Emphasis supplied.)

From the above it is evident that the case law to date on the LMRDA Act recognizes the validity of the proposition that when the union member who also holds a union office is disciplined for misconduct as a member, there is jurisdiction under the Act of a suit by him against his union such as Sheridan has brought. This conclusion is polarized by the generally admirable purpose of the

---

3. Even if Sheridan's removal had been actuated partly because of his misconduct in office and partly because of his conduct as a member of the union in bringing the municipal court action against a fellow member, the district court would still have jurisdiction. It is merely speculative whether the penalty would have been the same had the municipal court element of the matter not been present. Insofar as that single penalty can be traced to an illegal act on the part of the union under Section 101(a) (4) and 609, the court would have the power to remedy the wrong. Hamilton v. Guinan, supra. See also Salzhandler v. Caputo, supra.

Act. The House Report on the then bill states " * * * it is essential that union practices and procedures be democratic and that they recognize and protect the basic rights of the union members and the employees represented by unions." H.R. 1959 U.S.Code C & A News § 101. One of those significant basic rights is " * * * to institute an action in any court * * * irrespective of whether or not the labor organization or its officers are named as defendants or respondents * * *." Section 101(a) (4). Sheridan's criminal prosecution of another member of his local comes within the Labor Management Act of 1959. In accordance with the letter and spirit of that statute he should be protected in his individual right as a union member to proceed legally against Burke.